**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

RICHARD ROLAND JONES, III,            *

    Plaintiff,                              *

                                        Civil Action No. 8:25-cv-02875-PX

    v.                                      *

LOCKHEED MARTIN CORP., *et al.*,      *

    Defendants.                             *

***

**MEMORANDUM OPINION**

Pending in this workplace discrimination suit are Defendants Lockheed Martin Global Inc. ("LMG") and Heidi Moore ("Moore") (collectively "Defendants")'s Partial Motion to Dismiss for failure to state a claim, ECF No. 22, and Plaintiff Richard Roland Jones, III ("Jones")'s Motion for Leave to File a Second Amended Complaint, ECF No. 25. The matter is now ripe for resolution, and the Court finds no need for a hearing. *See* D. Md. Loc. R. 105.6. For the following reasons, Defendants' motion to dismiss is GRANTED and Jones' motion to amend is DENIED.

**I.    Background**

The following averred facts are taken from the Amended Complaint, accepted as true, and construed most favorably to Jones as the nonmovant. LMG is an American corporation headquartered in Maryland. ECF No. 20 ¶ 6. LMG hired Jones, who resides in Florida, as a fighter pilot-instructor and training operations manager for the United States Air Base located in Misawa, Japan ("Misawa Air Base"). *Id.* ¶ 14. Jones worked at the Misawa Air Base from 2021 to 2024, during which he received superior work evaluations and was ranked in the top one percent of LMG employees globally. *Id.* ¶¶ 15–16.

Jones is Black and a member of the "Hebrew [Judeo] religion" which he describes as espousing "non-traditional religious beliefs and practices that are outlined in scripture." ECF

1

No. 20 ¶¶ 10, 17. Among LMG's training managers and fighter pilots, he was the only Black man practicing the Hebrew (Judeo) faith. *Id.* ¶ 18.

At Misawa Air Base, Jones regularly interacted with Moore, a White woman who is a manager in a different business unit. ECF No. 20 ¶ 20. In June of 2022, Moore began engaging in a pattern of behavior that Jones believes was racially motivated. *Id.* ¶ 25. Even though Moore had no supervisory authority over Jones, she somehow stripped him of nonspecific key "duties" and gave those duties to White employees "without justification." *Id.* ¶ 26. Moore also destroyed "work materials" that Jones had to submit to his superiors, although it is unclear what those materials were, or what consequences, if any, Jones faced as a result. *Id.* ¶ 27. Moore also subjected Jones to what he calls "heightened scrutiny" and "inappropriate questioning" about business travel; and she would routinely interrupt and "commandeer" meetings that Jones was leading, but she did not do the same to White employees. *Id.* ¶ 28.

Jones also contends that in November 2022, two White male employees accused Jones of being racist because he hired and trained Black employees. ECF No. 20 ¶ 31. These same individuals referred to Jones and other Black employees as "lazy," "unethical," and "unprofessional." *Id.* ¶ 32. Although Jones reported both men to Human Resources ("HR"), nothing came of it. *Id.* ¶ 33. Around this same time, Jones learned that less experienced White pilots under his supervision were paid comparably to him. *Id.* ¶ 35. He asked for a raise, but the request was denied. *Id.* ¶ 36.

In May 2023, Jones complained to his direct supervisor and to HR about discrimination and harassment to no avail. ECF No. 20 ¶ 37. Several months later, in October 2023, Jones filed an official complaint concerning Moore with LMG's Equal Employment Opportunity ("EEO") office by way of his supervisor and HR. *Id.* ¶ 38.

Sometime after Jones filed the EEO complaint, Moore, along with others, filed ethics complaints against Jones based on nonspecific "false and fraudulent information." ECF No.

20 ¶ 43. LMG, in turn, suspended Jones without pay in January 2024. *Id.* ¶ 46. While Jones was on leave, Moore continued to make racist comments to others, particularly about how LMG in Japan used to be a "[W]hite's only office." *Id.* ¶ 47. Jones next complained about the protracted discrimination to LMG's Director of Ethics and the Vice President of Ethics. *Id.* ¶ 48. Jones' complaints were ignored, and then he was fired. *Id.*

This suit followed. ECF No. 1. The Amended Complaint brings against LMG and Moore claims for race discrimination and retaliation in violation of 42 U.S.C. § 1981 (Counts I & III); discrimination and retaliation in violation of Title VII, 42 U.S.C. § 2000e *et seq.* (Counts II & IV); and common law civil conspiracy (Count V).[1] ECF No. 20 ¶¶ 49–78. Defendants now move to dismiss the § 1981 and civil conspiracy claims. ECF No. 22. Jones responded and separately moved to file a Second Amended Complaint in which he withdraws the conspiracy claim (Count V). ECF Nos. 25 & 27. Thus, the Court grants dismissal of Count V by consent and will address the § 1981 claims below.

## II.    Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). In reviewing the motion, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United* States, 120 F.3d 472, 474 (4th Cir. 1997). The court also "may properly take judicial notice of matters of public record." *Phillips v. Pitt County Mem's Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). To survive a motion to dismiss, the complaint's factual allegations "must be enough to raise a right to belief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)

---

[1] The Amended Complaint mislabels the Title VII retaliation claim as "Count VI," when it should be Count IV, and the civil conspiracy claim as "Count VII" when it should be Count V (ECF No. 20 at 10 & 11). The Court will refer to the counts by their correct numerals.

(internal citations omitted).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

## III.   Analysis

Defendants challenge the sufficiency of the § 1981 claims because the alleged wrongdoing took place on the Misawa Air Base, and the statute does not apply beyond the jurisdiction of the United States.  ECF No. 22-1 at 11–12.  Whether the reach of § 1981 extends beyond U.S. borders is a matter of statutory construction, applying the well-known presumption against extraterritoriality doctrine.  *Okofori-Tenkorang v. American Intern. Group, Inc.* 460 F. 3d 296, 301 (2nd Cir. 2006).  The presumption against extraterritoriality teaches that laws passed by Congress apply only within the territorial boundaries of the United States unless "language in the [relevant Act] gives any indication of a congressional purpose to extend its coverage beyond places over which the United States has sovereignty or has some measure of legislative control."  *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991) (alteration in original) (internal quotations omitted).  "The underlying policy of the presumption against extraterritoriality is to prevent United States laws from conflicting with the laws of sovereign nations within their own territories."  *Marshall v. Exelis Sys. Corp.*, No. 13-CV-00545-CMA-KMT, 2014 WL 1213473, at *4 (D. Colo. Mar. 24, 2014) (citing *McCulloch v. Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10, 21 (1963)).  While a statute need not say "this law applies abroad" to avoid the presumption against extraterritoriality, courts should derive statutory meaning from "the most faithful reading" of the text to determine Congress' intent.  *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 265 (2010).

The Court begins, as it must, with the plain language of the § 1981, which states:

All persons *within the jurisdiction of the United States* shall have the same right in *every State and Territory* to make and enforce contracts, to sue, be

4

parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981 (emphasis added).

Accordingly, the statute by its express terms, confines application to persons "within the jurisdiction of the United States," *id.*, which "manifests Congress' intent" to limit application to conduct in the United States and not "beyond our borders," *Okofori-Tenkorang*, 460 F. 3d at 301 (internal quotations omitted). Moreover, Congress has, on more than one occasion, amended other anti-discrimination statutes to make their extraterritorial application explicit. *See* The Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071 (1991) (amending Title VII and the Americans with Disabilities Acts to reach conduct outside the United States); *see also* Pub. L. No. 98–459, § 802, 98 Stat. 1767, 1792 (1984) (amending the term "employee" in the Age Discrimination in Employment Act to include "any individual who is a citizen of the United States employed by an employer in a workplace in a foreign country" (codified at 29 U.S.C. § 630(f)). But Congress has never similarly amended § 1981.

Based on this, the Court comfortably concludes—like every other court to have reached the issue—that § 1981 does not apply extraterritorially. *See, e.g.*, *Ofori-Tenkorang*, 460 F.3d at 298 (dismissing § 1981 claims where alleged conduct occurred in South Africa); *Dosso v. British Airways, PLC*, Civ. No. AW-07-2710, 2010 WL 3002077, at *1 (D. Md. July 29, 2010) (dismissing a § 1981 claim in which the act giving rise to the claim occurred in the United Kingdom); *Harmon v. Dyncorp Intern., Inc.*, No. 1:13CV1597, 2015 WL 518594, at *12 (E.D. Va. Feb. 6, 2015) (dismissing a § 1981 claim where "all of the material underlying events occurred in Afghanistan"); *Belanger v. New York U.*, No. 21 Civ. 01644, 2025 WL 963308, at *13 (S.D.N.Y. Mar. 31, 2025) (citing *Ofori-Tenkorang*, 460 F.3d at 298) (holding that § 1981 could not apply to a plaintiff's claims that occurred while plaintiff was in China), *appeal dismissed* (Sept. 16, 2025); *see also* Robert B. Stulberg & Amy F. Shulman, *Representing*

*Americans Employed Abroad: the Extraterritorial Application of Federal and State Discrimination Laws*, 11 Ilsa J. Int'l & Comp. L. 287, 421 (2004).

Jones does not meaningfully dispute this conclusion. Rather, he argues that because Misawa Air Base is a "de facto" U.S. territory, § 1981 must apply to the alleged misconduct. ECF No. 24 at 2. Jones relies heavily on the Supreme Court's holding in *Rasul v. Bush*, 542 U.S. 466, 480–81 (2004), wherein the Court extended federal habeas corpus protection under 28 U.S.C. § 2241 to detainees held at the U.S. Naval Base at Guantanamo Bay, Cuba. In so concluding, the *Rasul* Court looked to the "express terms of its agreements with Cuba," to conclude that "the United States exercises 'complete jurisdiction and control' over the Guantanamo Bay Naval Base, and may continue to exercise such control permanently if it so chooses." *Id.* (quoting Lease of Lands for Coaling and Naval Stations, art. III, Feb. 23, 1903, U.S.-Cuba).

Although arguably *Rasul* is limited to habeas relief, *see Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 196 (5th Cir. 2017) (citing *Marshall*, 2014 WL 1213473, at *7), even if *Rasul* applies beyond the habeas context, it does not compel the same outcome here. This is so because the treaty governing Misawa Air Base reflects that neither party intended for the United States to acquire comparable control over U.S. military facilities in Japan as that governing Guantanamo in *Rasul*. Rather, Japan and the United State agreed that the "areas" and "facilities" the United States occupies in Japan are simply borrowed until "they are no longer needed." Agreement Regarding Facilities and Areas and the Status of U.S. Armed Forces in Japan, Japan-U.S., art. II, ¶¶ 1(a), 3, Jan. 19, 1960, U.N.T.S. No. 5321.[2] And those areas must be maintained in accordance with the aim of eventual "return" of the territory to Japan. *See id.* at art. II, ¶ 1(b). Indeed, even while occupying the military bases in Japan,

---

[2] *See* https://treaties.un.org/doc/Publication/UNTS/Volume%20373/volume-373-I-5321-English.pdf to access the relevant Treaty.

"members of the United States armed forces, the civilian component, and their dependents shall be subject to the laws and regulations administered by the customs authorities of Japan." *Id.* at art. XI, ¶ 1. From these provisions alone, the Court concludes that Japan has certainly granted the United States some use and control of the Misawa Air Base, but it is by no means sufficient to conclude that the Base is a "de facto U.S. territory." *Cf. Gallaspy v. Raytheon Tech. Services Co.*, No. EP-04-CV-0012-FM, 2005 WL 1902534, at *1, *5 (W.D. Tex. Aug. 9, 2005) ("[B]ecause the United States has merely been granted use of Korean territory," as part of the governing Mutual Defense Treaty of October 1, 1953, "Section 1981 cannot provide relief" for claims arising on Kunsan Air Base in South Korea). Thus, *Rasul* does not persuade the Court that the § 1981 claims may proceed. The motion to dismiss Counts I and III is granted.

## IV.    Motion for Leave to File a Second Amended Complaint

In an attempt to cure the § 1981 deficiencies, Jones seeks leave to file a second amended complaint, ECF No. 27, that Defendants oppose on futility grounds, ECF No. 29. Federal Rule of Civil Procedure 15(a)(2) dictates that "[t]he court should freely give leave" to amend a pleading "when justice so requires." Nonetheless, leave may be denied when amendment would be futile—that is, when the proposed amended claims would fail as a matter of law. *See Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006); *see also Whitaker v. Ciena Corp.*, Civ. No. RDB-18-0044, 2018 WL 3608777, at *3 (D. Md. July 27, 2018). In assessing whether an amended claim is futile, the Court applies the same legal standard as it does when reviewing a claim for sufficiency under Rule 12(b)(6). *See Kerrigan v. Bd. of Educ. of Carroll Cty.*, No. JKB-14-3153, 2016 WL 470827, at *3 (D. Md. Feb. 8, 2016); *see also United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008). Accordingly, the Court must consider all well-pleaded allegations as true and most favorably to Jones. *Ibarra*, 120 F.3d at 474. However, mere legal conclusions couched as facts will not make plausible

the claim.  *See Iqbal*, 556 U.S. at 678; *see also Cole v. Hillside Fam. of Agencies, Inc.*, Civ. No. PJM 1 0-3326, 2011 WL 2413928, at *8 (D. Md. June 9, 2011) (dismissing a § 1981 claim where plaintiff asserted only conclusory allegations of discrimination).

Although not altogether clear, Jones' corrective strategy seems to be to add sparse references to episodic conduct on United States soil.  ECF No. 27.  Namely, Jones avers (1) that while he and Moore were working in Florida, Moore "escalated her racially discriminatory conduct" by "destroying [Jones'] work materials;" (2) that the two White employees who called Black employees "lazy" and "unethical" did so "while [Jones] was working in Atlanta;" (3) that Jones received "disparate pay" while working in the United States; and (4) that he made complaints about "discrimination and harassment" while working in Florida.  *See* ECF No. 27-1 ¶¶ 27, 32, 35, 37.  The problem for Jones is that the allegations are so vague and nonspecific, the claims fail on the merits, regardless of where the actions occurred.  The Court considers each count separately.

Because the substantive elements of § 1981 mirror those under Title VII, the Court borrows the Title VII pleading standards to assess the § 1981 claims.  *Newcomer v. MOM's Organic Mkt., Inc.*, No. 8:24-CV-00562-PX, 2025 WL 903857, at *7 (D. Md. Mar. 25, 2025); *see also Bowling v. Humanim, Inc.*, No. JKB-16-3298, 2017 WL 713862, at *2 (D. Md. Feb. 22, 2017).  For race discrimination, a plaintiff must aver some facts must make plausible "that, but for race, the plaintiff would not have suffered the loss of a legally protected right" under the statute.  *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020).

Where, as here, no averred facts support direct discrimination, the Court employs the well-known burden-shifting framework announced in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).  *See Bowling v. Balt. City Bd. of Sch. Comm'rs*, No. ELH-15-3431, 2017 WL 713862, at *2 (D. Md. Feb. 22, 2017).  Under *McDonnell Douglas*, the plaintiff must make a prima facie showing that (1) he belonged to a protected class; (2) he performed his job

satisfactorily; (3) he suffered an adverse employment action; and (4) similarly situated employees who were not members of his protected class received more favorable treatment. *See White v. BFI Waste Servs.*, LLC, 375 F.3d 288, 295 (4th Cir. 2004). If the plaintiff makes that showing, the burden shifts to the employer to assert a legitimate, nondiscriminatory reason for its conduct, and then the burden shifts back to the plaintiff to show the stated reason was pretextual. *McDonnell Douglas Corp.*, 411 U.S. at 802.

As for pleading an adverse employment action, an employee need not show particularly "significant" harm to state a prima facie case. *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 355 (2024) (quoting *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 657–58, 681 (2020)). But he must aver that he sustained *some* injury by the averred misconduct that, for purposes of this amendment, took place in the United States. *See id.* In this important respect, the claims still fail.

At best, the proposed pleading points to a single instance in which Moore destroyed some nondescript work material, but no facts make plausible that the distasteful act harmed Jones. ECF No. 27 ¶ 27. Likewise, coworkers' opprobrious comments about Black employees being "lazy," "unethical," and "unprofessional" may be relevant background, but they alone do not alone make plausible a discrimination claim against Jones, especially when considering he worked principally at the Misawa Air Base, not in Florida. *Id.* ¶ 32. Nor does Jones aver any adverse action taken *against him* after he reported the wrongdoers to HR. *Id*. ¶ 33; *cf. McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 410 (4th Cir. 2022) (explaining that, when racial harassment is not attributable to a supervisor, it is unlikely to rise to the level of a hostile work environment claim). Thus, amendment to Count I would be futile and must be denied.

Next, as to the disparate pay allegation, Jones tries to cure the § 1981 claim by merely appending that the disparate pay happened "during periods while working in the United States." ECF No. 27 ¶ 35. But this averment tells the Court nothing about when it occurred or how

9

long. And against the backdrop that Jones worked on Misawa Air Base as a pilot and trainer for *three years*, *id.* ¶ 13, it cannot transform the claim to one that took place on United States soil. Especially when considering how few facts actually support the claim itself. Accordingly, the Court denies amendment as to Count I.

The retaliation claim suffers from the same flaws. To make plausible race-based retaliation, some facts must show that on account of plaintiff's activity protected under § 1981, the employer took an adverse employment action against him. *Jenkins v. Gaylord Ent. Co.*, 840 F. Supp. 2d 873, 880 (D. Md. 2012) (citing *Tasciyan v. Med. Numerics*, 820 F. Supp. 2d 664, 675 (D. Md. 2011)). Protected activity includes an employee's opposition of unlawful discrimination aimed at others. *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416–17 (4th Cir. 2015). But some facts, such as temporal proximity between the protected activity and the adverse action, must make plausible that the two are causally connected. *See Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 126 (4th Cir. 2021).

When viewing the proposed amended pleading most favorably to Jones, he complained to HR in May of 2023 about race-based discrimination while he was in Florida. *See* ECF No. 27 ¶ 37. But thereafter, all of Jones' protected activity appears to have occurred at Misawa Air Base, as did the subsequent retaliatory false allegations of ethical misconduct and his termination. *Id.* ¶¶ 38, 42, 44–48. As a result, no facts make plausible that the retaliation occurred in the United States. Accordingly, Count III as amended also fails.

For these reasons, the motion to amend the pleading must be denied as futile. Further, because Jones has twice attempted to cure the pleading defects without success, the Court dismisses Counts I and III with prejudice. *See Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008) (no abuse of discretion where complaint dismissed with prejudice because "amendment would be futile in light of the fundamental deficiencies in plaintiffs' theory of liability"); *McLean v. United States*, 566 F.3d 391, 401 (4th Cir. 2009) ("[o]nce a

court has determined that the complaint is truly unamendable, a dismissal without prejudice is of little benefit to the litigant, as the claim cannot be made viable through reformulation.").

Last, the Court lifts the stay on the remaining claims, and Defendants must answer the Amended Complaint within fourteen days from the date of this decision and accompanying order. However, because the § 1981 claims are dismissed, and the Court cannot see how the Title VII claims can proceed against Moore,[3] the parties should be prepared to discuss the basis for Moore's continued participation in the litigation at the first scheduled status conference with the Court.

## V.    Conclusion

For the above-stated reasons, Defendants' Partial Motion to Dismiss, ECF No. 22, is granted, and Jones' Motion for Leave to File an Amended Complaint, ECF No. 25, is denied. Counts I and III of the Amended Complaint are dismissed with prejudice. A separate order follows.

Date:   <u>August 4, 2026</u>

/s/
_____
PAULA XINIS
United States District Judge

---

[3] *See* 42 U.S.C. § 2000e-2(a) ("It shall be an unlawful employment practice for *an employer* . . . to . . . discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin") (emphasis added); *see also Windsor v. Bd. of Educ. of Prince George's Cnty.*, No. CV TDC-14-2287, 2016 WL 4939294, at *7 (D. Md. Sept. 13, 2016) ("Title VII creates a cause of action against only employers, not individual supervisors.").